# EXHIBIT #2

Christopher S. Hill (9931)
Gregory S. Moesinger (10680)
KIRTON McCONKIE
36 South State Street, Suite 1900
Salt Lake City, Utah 84145-0120
Telephone:  801-328-3600
Facsimile:  801-321-4893
chill@kmclaw.com
gmoesinger@kmclaw.com

Attorneys for Kirton McConkie PC, Craig McCullough, Lisa Stephens,
Mark Eliason, Laurie Eliason, Bryan Stephens, Eliason Enterprises, LLC, and
The Corporation of the President of The Church of Jesus Christ of Latter-day Saints

---

## IN THE THIRD JUDICIAL DISTRICT COURT IN AND FOR

## SALT LAKE COUNTY, STATE OF UTAH

---

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF MAX ELIASON,<br><br>    Plaintiff,<br><br>vs.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; KIRTON McCONKIE, PC; PARSONS BEHLE & LATIMER; THE HONORABLE JUDGE ROBERT FAUST; BRYAN STEPHENS; LISA STEPHENS; JASON STEPHENS; AND CRAIG McCULLOUGH,<br><br>    Defendants. | **DEFENDANTS' MOTION TO DECLARE BRETT L. ELIASON A VEXATIOUS LITIGANT**<br><br><br>Case No. 233902534<br><br>Judge Kara Pettit |

---

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iii

CONCISE STATEMENT OF RELIEF AND GROUNDS ........................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

    The 2 Probate Actions ..................................................................................................... 2

    The State Court Action (Mow Case) and Brett's Initial Probate Disputes ................................. 3

    The 4 Federal Court Cases ............................................................................................... 7

    The 2019 and 2023 Business Lawsuits ............................................................................... 8

    The 5 Additional 2023 Renewed Petitions in 3 Probate Actions ........................................... 10

    The 2023 Federal Action ................................................................................................ 13

    Two New State Court Actions .......................................................................................... 14

    The Yet-unfiled Complaint .............................................................................................. 15

    The Impertinent Material ............................................................................................... 15

ARGUMENT ..................................................................................................................... 20

I. LEGAL STANDARD ...................................................................................................... 20

II. BRETT IS A VEXATIOUS LITIGANT ........................................................................... 22

    A. Brett is a vexatious litigant under U.R.C.P. 83(a)(1)(A) because courts have issued final determinations more than five times against Brett's claims and no claims determined in his favor ........................................................................................................................... 22

    B. Brett is also a vexatious litigant under U.R.C.P. 83(a)(1)(B) because on no less than 24 occasions Brett has attempted to re-litigate the claims, issues of fact, and issues of law determined against him in the State Court Action .............................................................. 24

    C. Brett is also a vexatious litigant under U.R.C.P. 83(a)(1)(C) because on many occasions Brett has filed unmeritorious papers or papers that contain redundant, immaterial, impertinent or scandalous matter, or has engaged in frivolous tactics solely for the purpose of harassment or delay ................................................................................................. 25

III. THERE IS NO REASONABLE PROBABILITY THAT BRETT WILL PREVAIL ON ANY PENDING CLAIM ............................................................................................................. 26

    A. Res Judicata Bars Those Claims Adjudicated in the State Court Action ........................... 27

    B. Res Judicata Applies to the Claims Attempted in the State Court Action Motion to Amend ................................................................................................................................. 29

    C. Brett Cannot Prevail on His Claims as They are Time Barred ....................................... 31

i

IV. THE COURT SHOULD REQUIRE BRETT AS A VEXATIOUS LITIGANT TO FURNISH SECURITY, OBTAIN LEGAL COUNSEL, AND PETITION THE COURT FOR LEAVE BEFORE FILING ANY ADDITIONAL PAPERS EITHER IN THIS PROCEEDING OR IN ANY FUTURE PROCEEDING BEFORE THE DISTRICT COURTS OF UTAH .................... 32

    A. Brett should be required to furnish security to assure payment of Movants' reasonable expenses, costs, and attorney fees in the pending action and in future actions in Utah District Courts ................................................................................................................ 32

    B. Brett should be required to obtain legal counsel before proceeding in this action, all pending actions, or filing any future claim for relief in the district courts of Utah ........... 34

    C. Plaintiff should be required to obtain leave of the court before filing any additional paper in this action or any future action in the district courts of Utah ......................................... 35

V. IN ADDITION TO THE PROCEDURES AVAILABLE UNDER RULE 83, THIS COURT ALSO HAS INHERENT POWER TO IDENTIFY BRETT AS A VEXATIOUS LITIGANT AND TAKE APPROPRIATE MEASURES IN RESPONSE ...................................................... 36

CONCLUSION ..................................................................................................................... 38

# TABLE OF AUTHORITIES

Page(s)

Cases

*Airframe Sys., Inc. v. Raytheon Co.*,
601 F.3d 9 (1st Cir. 2010) ............................................................................ 29

*Alyeska Pipelines Co. v. Wilderness Society*,
421 U.S. 240 (1975) ..................................................................................... 32

*Arrigo v. Link*,
836 F.3d 787 (7th Cir. 2016) ........................................................................ 28

*Attias v. Carefirst, Inc.*,
865 F. 3d 620 (D.C. Cir. 2017) ...................................................................... 22

*Barnard v. Wasserman*,
855 P.2d 243 (Utah 1993) ............................................................................. 36

*D'Amico v. Board of Medical Examiners*,
11 Cal.3d 1 (1974) ........................................................................................ 32

*EFCO Corp. v. U.W. Marx, Inc.*,
124 F.3d 394 (2d Cir. 1997) .......................................................................... 29

*Gardiner v. York*,
2010 UT App 108, 233 P.3d 500 ................................................................... 36

*Gorostieta v. Parkinson*,
2000 UT 99, 17 P.3d 1110 ............................................................................. 36

*Hall v. Cole*,
412 U.S. 1(1973) ........................................................................................... 32

*Hansen v. Bank of New York Mellon*,
2013 UT App 132, , 303 P.3d 1025 ............................................................... 27

*Hatch v. Boulder Town Council*,
471 F.3d 1142 (10th Cir. 2006) ............................................................... 27, 28

*Hatch v. Trail King Indus., Inc.*
699 F.3d 38 (1st Cir. 2012) ........................................................................... 29

*Henshaw v. Henshaw*,
2012 UT App 56, 271 P.3d 837 ..................................................................... 36

*Huck on Behalf of Sea Air Shuttle Corp. v. Dawson*,
106 F.3d 45 (3d Cir. 1997) ............................................................................ 29

*In re Est. of Strand*,
    2012 UT App 144, 281 P.3d 268 ........................................................................ 23

*In re Estate of Voorhees*,
    366 P.2d 977 (1961) .......................................................................................... 23

Johnson v. SCA Disposal Servs. of New Eng., Inc.,
    931 F.2d 970 (1st Cir. 1991) ............................................................................ 29

*Johnson v. Stock*,
    03-4219, 2005 WL 1349963 (10th Cir. June 8, 2005) .................................... 35

*Lundahl v. Quinn*,
    2003 UT 11, 67 P.3d 1000 ............................................................................... 36

*Madsen v. JPMorgan Chase Bank, NA*,
    2012 UT 51, fn. 2, 296 P.3d 671 ..................................................................... 27

*Massey v. Bd. Of Trustees of Ogden Area Cmty. Action Comm., Inc.*,
    2004 UT App 27, , 86 P.3d 120 ....................................................................... 28

*Montana v. U.S.*,
    440 U.S. 147 (1979) ......................................................................................... 27

*Morton v. Continental Baking Co.*,
    938 P.2d 271 (Utah 1997) ................................................................................ 36

*Moss v. Parr Waddopus Brown Gee & Loveless*,
    2012 UT 42, 285 P.3d 1157 ............................................................................. 27

*Nevada v. U.S.*,
    463 U.S. 110 (1983) ......................................................................................... 27

*Ockey v. Club Jam*,
    2014 UT App 126, 328 P.3d 880 ..................................................................... 36

*Parkins v. Patterson*,
    215 F.3d 1337 (table), 2000 WL 639704 (10th Cir. 2000) .............................. 30

*Press Pub., Ltd. V. Matol Botanical Int'l, Ltd.*,
    2001 UT 106, 37 P.3d 1121 ............................................................................. 27

*Prof'l Mgmt. Assocs., Inc. v. KPMG LLP*,
    345 F.3d 1030 (8th Cir. 2003) ......................................................................... 28

*Qualicare–Walsh, Inc. v. Ward*,
    947 F.2d 823 (6th Cir.1991) ............................................................................ 29

*Serrano v. Priest*,
    20 Cal.3d 25 (1977) ......................................................................................... 32

*Strand v. Nupetco Associates*,
    397 P.3d 724 (Utah Ct. App. 2017) ................................................................. 19

*WDIS, LLC v. Hi-Country Ests. Homeowners Ass'n*,
  2019 UT 45, 449 P.3d 171 ........................................................................... 22

Statutes

Utah Code § 78B-2-307(3) ............................................................................... 30
Utah Code § 78B-5-825(1) ............................................................................... 32

Rules

RULE 83 ................................................................................................... passim
Rule 83(a)(1) .................................................................................................. 21
Rules 7 and 83 of the Utah Rules of Civil Procedure ........................................ 1
U.R.C.P. 83(a)(1)(A) ......................................................................... i, 21, 22, 23
U.R.C.P. 83(a)(1)(B) ............................................................................. i, 23, 24
U.R.C.P. 83(a)(1)(C) ................................................................................. i, 25
U.R.C.P. 83(b)(1) .......................................................................................... 32
U.R.C.P. 83(b)(1)(4), 83(b)(1)(5) ................................................................... 35
Utah R. Civ. P. 83(b) ......................................................................... 19, 20, 32
Utah R. Civ. P. 83(c) ..................................................................................... 26

Other Authorities

18 Wright & Miller, Federal Practice and Procedure § 4412 ........................... 29
Restatement (Second) of Judgments § 25 .................................................. 28, 29

Pursuant to Rules 7 and 83 of the Utah Rules of Civil Procedure and this Court's inherent power to control vexatious litigation, Lisa Stephens ("**Lisa**"), Craig McCullough ("**Mr. McCullough**"), Kirton McConkie, P.C. ("**Kirton**"), Mark Eliason ("**Mark**"), Laurie Eliason, ("**Laurie**") Bryan Stephens ("**Bryan**"), Eliason Enterprises, LLC, Eliason Eight, LLC and The Corporation of the President of The Church of Jesus Christ of Latter-day Saints (the "**Church**") (collectively, the "**Movants**"), by their undersigned counsel, hereby move the Court for an order declaring that Brett L. Eliason ("**Brett**") is a vexatious litigant and for further relief as more fully outlined herein.

## CONCISE STATEMENT OF RELIEF AND GROUNDS

Brett is a vexatious litigant. The degree of his harassment over more than four years has to stop. He has filed no less than 10 separate actions in 6 different courts, as well as at least 8 petitions or other motions for relief in 2 probate actions not filed by Brett. He has named over 100 persons as defendants, including at least 3 federal and state judges and 92 attorneys (both his own, opposing counsel, and attorneys unconnected with him in any way). And all arising out of the same facts and circumstances that have been disposed of against him time and time again. He refuses to listen to the Court. There can be no stopping Brett without Court intervention limiting his egregious conduct.

Thus, as allowed by Rule 83, Movants respectfully request that this Court enter an order requiring Brett to: (1) furnish security in the amount of $50,000.00 to assure payment of the Movant's reasonable expenses, costs and attorneys' fees in this and all currently pending actions filed by Brett together with an additional security deposit requirement on new complaints or probate petitions, before opening any such matter, in the amount of an additional $25,000.00 per

1

filing; (2) obtain legal counsel before proceeding in any pending action against any of the Movants or related persons; (3) obtain legal counsel before filing any future claim for relief in this or any other Court; (4) abide by a prefiling order requiring Brett to obtain leave of the Court before filing any paper, pleading, or motion in any pending action for which Brett is a party; and (5) abide by a prefiling order requiring Brett to obtain leave of the Court before filing any future claim for relief in any court. Further, the Court should enter an Order to Show Cause against Brett as to why additional monetary sanctions should not issue against Brett for his willful, wanton, and egregious vexatious behavior in these actions.

## STATEMENT OF FACTS

The sheer volume of harassing filings by Brett makes it easy to overlook how serious the more troublesome material is. Nevertheless, Movants believe it is important to outline the full history of his conduct that falls under the provisions of Rule 83 to leave no doubt as to the magnitude of the problem and the necessity for the requested relief.

**The 2 Probate Actions**.

1.      Brett's involvement in the relevant legal proceedings originally arise out of an initially uncontested probate administration case. On June 22, 2018, Lisa, Brett's sister, filed an Application for Informal Probate of Will and Informal Probate of Personal Representative, initiating Case No. 183901323 (the "**Estate Action**"). Therein, Lisa sought the informal probate of Joyce Eliason's ("**Joyce**") will and to be appointed as Personal Representative of Joyce's estate. Joyce was Lisa and Brett's mother, and Brett was an interested person in Joyce's estate.

2.      The Court granted the relief sought by Lisa in the Estate Action on June 22, 2018.

2

3.      On May 3, 2019, Lisa filed a Petition for Guardianship and Conservatorship
seeking to be appointed as guardian and conservator over the affairs of Max Eliason ("**Max**")
(Case No. 193900932) (the "**G/C Action**"). Max is Joyce's surviving spouse, and father to Lisa
and Brett.

4.      The Court granted the relief sought in the G/C Action on June 10, 2019.

**The State Court Action (Mow Case) and Brett's Initial Probate Disputes**.

5.      Staring in 2019, Brett began complaining about the administration of the affairs of
Joyce and Max.

6.      On March 6, 2019 (prior to the commencement of the G/C Action), Brett filed a
Complaint and Request for Injunction, captioned *Eliason v. Kirton McConkie, et al.*, in the Third
Judicial District Court (Case No. 190901906) (the "**State Court Action**") (albeit the complaint
utilized a form generated by and captioned in the Utah Federal District Court). Originally-named
defendants were Kirton, Mr. McCullough, and Lisa.

7.      The gravamen of Brett's initial complaint allegations was that Lisa and Kirton
colluded to take control of an undefined "Eliason Estate" and deprive Brett of his rights and
interests in monies claimed to be payable to him.

8.      On July 1, 2019, Brett filed a revised complaint. The revised complaint purported
to add Joyce's Estate and Max's Estate (wrongfully represented by Brett) as plaintiffs. It also
added the Church, Dallin H. Oaks, nine additional attorneys or employees of Kirton, Bryan
(accountant for the various trusts and estates), and Mark and Laurie (trustees of certain Eliason
trusts).

9.      On September 10, 2019, Brett, through counsel this time, filed an Amended Complaint asserting twelve claims for relief, removing the most-recently-added plaintiffs and all newly added defendants except for Bryan.

10.      On October 22, 2019, Brett, through counsel, filed a Second Amended Complaint (attached hereto as **Exhibit "A"**.)

11.      In this Second Amended Complaint, Brett adds back in as defendants Mark and Laurie, and adds Eliason Enterprises, LLC and Eliason Eight, LLC, as new defendants.  *Id*.

12.      The twelve claims for relief were denominated as Civil Conspiracy, Theft, Breach of Fiduciary Duty, Intentional and/or Negligent Infliction of Emotional Distress, Accounting, Tortious Interference with Economic Relations, Declaratory Relief regarding Trustee of Trusts and Estates, Punitive Damages, Violation of Trustee Duties, Conflict of Interest, Negligence, and Vicarious Liability. *See generally, id.* at pp. 13-24.

13.      The factual allegations giving rise to the causes of action arose generally from claims that the defendants manipulated Joyce and Max to amend their estate planning documents, ignoring applicable fiduciary obligations and conflicts of interest, that said documents were void, that the estate documents facilitated defendants taking control of Joyce's and Max's assets to deprive Brett of his fiduciary roles and beneficial interests, that these defendants usurped control of business entities over which Brett claimed rights, and entered into financial transactions to steal and hide the assets of Max and Joyce's estate. *See generally, id.* at pp. 5-12.

14.      On November 15, 2019, the State Court Action defendants filed a motion to dismiss.

15.     On December 17, 2019, Brett, again *pro se*, opposed the motion to dismiss and filed a motion to amend his complaint yet again (attached as **Exhibit "B"**). This proposed amendment purported to add several plaintiffs (Max, Max's estate, Joyce's Estate, Brett's two daughters, and Brett's former spouse. The proposed amendment again purported to add back in as defendants the Church, Dallin H. Oaks, more than eighty individual Kirton attorneys, Brett's own former withdrawn counsel, and multiple additional parties with tangential or unknown connections with the facts alleged in the proposed amended complaint.

16.     This attempted complaint amendment spanned 185 pages, 855 paragraphs, and 35 causes of action. It exhaustively detailed every possible grievance Brett could have arising out of (and expanding upon) the fact pattern alleged in his Second Amended Complaint in the State Court Action.

17.     On February 20, 2020, the Third District Court, Judge Adam Mow presiding, entered a Ruling and Order Granting Defendants' Motion to Dismiss and Motion to Strike Improper Filing ("**Ruling and Order**") (attached as **Exhibit "C"**). By the Ruling and Order, the Court struck Brett's motion to amend. The Court also granted the defendants' motion to dismiss with prejudice.

18.     Brett did not appeal the Ruling and Order striking his motion to amend and dismissing his claims with prejudice.

19.     During the pendency of the State Court Action, on July 5, 2019, Brett filed in the G/C case a Motion to Schedule Hearing to Contest the Dismissal of Plaintiff's Rights Under his Power of Attorney and Jonder of Lee Wright and Craig McCullough as Defendants (attached as **Exh. "D"**.

20.    By this motion, Brett sought to have the Max and Joyce estate planning documents reviewed and reversed by the Court, on the grounds of supposed conflict of interest transactions.

21.    On July 19, 2019, the Court, Judge Faust presiding, denied Brett's motion.

22.    Not to be deterred, on August 12, 2020, back in the Estate Case, Brett filed a motion to compel the appointment of a receiver to audit all of the estate planning transactions of Max and Joyce, to challenge Lisa's trustee status, to appoint a district attorney for criminal prosecution, and other intelligible relief, purportedly (and wrongfully) on behalf of himself, Joyce's Estate, and Max, against Lisa, Bryan, and McCullough (attached as **Exh. "E"**).

23.    This 21-page motion again sought to litigate the same issues that were disposed of in the State Court Action Ruling and Order by Judge Mow (**Exh. "C"**). Specifically, Brett alleged that these parties embezzled from and abused Max and Joyce in disappearing the $200 million estates of Max and Joyce. The facts supporting these claims are the same facts pled in the State Court Action – that estate planning documents were improperly presented to Max and Joyce to "Rape, Pillage, and Plunder" Max and Joyce's estates, provide control of their assets to the defendants, and that conflicts of interest and conspiracies have caused the concealment of these actions. He also alleges attempted murder of Joyce and himself by the defendants.

24.    On October 7, 2020, the Court held a hearing on Brett's motion. The Court, Judge Faust presiding, dismissed Brett's motion on the grounds that it was insufficient. See Minute Entry dated 10-07-2020, attached as **Exh. "F".**

**The 4 Federal Court Cases**.

25.     Instead of appealing the Ruling and Order dismissing his claims in the State Court Action, on February 26, 2020[1], Brett filed a new Complaint with the Utah Federal Court, Civil No. 1:20-cv-00024, before Judge Shelby and Magistrate Judge Pead (the "**Utah Federal Lawsuit**").

26.     Two days later, on February 28. 2020, Brett filed a substantially identical "Complaint and Causes for Action" denominated by the Court as the Amended Complaint. A copy of the Utah Federal Lawsuit Amended Complaint is attached as **Exhibit. "G".**

27.     This Amended Complaint largely mirrored the attempted amended pleading that was denied in the State Court Action. It named more than a hundred defendants, over one thousand allegations, and forty-five causes of action related to the administration of the Estate in the claims and allegations of the Complaint and accompanying exhibits.

28.     This federal lawsuit, too, was dismissed on the merits with prejudice. *See* Order Dismissing Amended Complaint with Prejudice and Closing Case, filed on September 4, 2020 (attached as **Exh. "H"**).

29.     Not to be deterred, Brett filed similar lawsuits in the Federal District Courts for Colorado (Civil No. 1:2020-cv-00959) (the "**Colorado Federal Lawsuit**") (attached as **Exh. "I"**), Hawaii (Civil No. 1:2020-cv-00257) (the "**Hawaii Federal Lawsuit**") (attached as **Exh. "K"**), and the Northern District of Texas (Civil No. 3:2020-cv-02747) (the "**Texas Federal Lawsuit**") (attached as **Exh. "M"**)

---

[1]     Hand-stamped as filed on Feb. 25, 2020; electronically stamped and docketed as filed on Feb. 26, 2020.

30.      These claims mirror the State Court Action claims that were dismissed as well as the Utah Federal Lawsuit claims that were dismissed. The primarily notable difference is that Brent tends to interchange defendants between various actions, including naming judges from the prior courts' rulings against him in his subsequently filed lawsuits. *See*, *e.g.,* Colorado Federal Lawsuit Complaint, **Exh. I**.

31.      Each of the Colorado Federal Lawsuit, the Hawaii Federal Lawsuit, and the Texas Federal Lawsuit were dismissed by their respective courts. *See* dismissal orders and/or dockets with dismissal minute entries for each respective case, (attached as **Exh's. "J", "L", and "N"** respectively).

32.      Brett also filed a similar action on an extraordinary writ with the Utah Court of Appeals, Case No. 20200548 (the "**Utah Appeals Case**") (docket regarding same attached **as Exh. "O"**).  That petition for extraordinary writ was denied on August 3, 2020.  *See* Order (attached as **Exh. "P"**).

**The 2019 and 2023 Business Lawsuits**.

33.      On March 8, 2019, Brett filed a Petition for Preliminary Injunctive Relief in the Utah Third Judicial District Court, against Lisa, Bryan, Mr. McCullough, Kirton, and others Civil No. 190901999, before Judge Skanchy (the "**2019 Business Lawsuit**") (attached as **Exh. "Q"**).

34.      The claims asserted in the 2019 Business Lawsuit consist of causes of action for fraud, theft, bribery, extortion, emotional distress, conversion, interference with economic relations, breach of fiduciary duty, breach of contract, and breach of good faith.

35.     The predicate facts for the 2019 Business Lawsuit claims are the same facts litigated to final judgment in the State Court Lawsuit and the Utah Federal Lawsuit – to wit – Lisa and McCullough manipulated control of these businesses, as assets of the various estates and/or trusts, by virtue of the same conduct that was complained of in the prior lawsuits.

36.     The Court dismissed Lisa, Mr. McCullough, and Kirton.

37.     On July 16, 2019, the Plaintiff filed his Amended Complaint (attached as **Exh. "R"**).

38.     Plaintiff voluntarily dismissed out Bryan.

39.     However, the Plaintiff attempted to bring the Amended Complaint on behalf of himself and of "The Estate of Joyce S. Eliason."

40.     Lisa, as the duly-appointed personal representative for the Estate (from the aforementioned Estate Action), filed a motion to strike that portion of the 2019 Business Lawsuit Complaint(s) seeking to plead relief on behalf of the Estate.

41.     On October 7, 2019, the Court entered an Order Granting Renewed Motion to Dismiss and for More Definite Statement (attached as **Exh. "S"**) dismissing the Estate as an improper party.

42.     The remaining claims in the 2019 Business Lawsuit were dismissed without prejudice. *Id*.

43.     In 2023, Brett began to revisit his dissatisfaction with the outcomes of his prior lawsuits

44.     On August 9, 2023, Brett, through counsel, filed a Complaint in the Third Judicial District Court captioned *Eliason et al. v. Stephens et al.*, Case no. 230905835 (the "**2023 Business Lawsuit**") (attached as **Exh. "T"**).

45.     This Complaint purports to be brought on behalf of Brett, his two daughters, and derivatively on behalf of two limited liability companies, against Lisa, Mark, Jason, and Lisa in her capacity as trustee of six specified trusts. While the Complaint purports to be a corporate and trust records demand, it again revisits the allegations of Brett's disagreement with being removed as trustee of the various trusts by Lisa and Mr. McCullough, seeking to avoid the same transactions that were previously litigated, and asserting claims arising from his claim that the estate planning documents of Max and Joyce were wrongfully amended.

46.     Brett, through counsel, filed an amended complaint largely mirroring the original complaint, but not materially changing the factual allegations upon which the claims for relief rested.

47.     Upon defendants' filing of a motion to dismiss or motion for more definite statement, Brett filed a motion for leave to file a second amended complaint.

48.     While that motion was pending, Brett's counsel moved to leave to withdraw, which leave was granted on October 20, 2023.

49.     The motion to dismiss and motion for leave to amend remain pending.

**The 5 Additional 2023 Renewed Petitions in 3 Probate Actions**.

50.     Notwithstanding the pending 2023 Business Lawsuit, Brett commenced a flurry of new petitions and complaints without representation of counsel.

51.     On August 17, 2023, in the G/C Action, Brett filed a Petition for the Immediate Removal of Lisa Stephens as Trustee and Craig McCullough as Trust Protector of [all Eliason Trusts] (attached as **Exh. "U"**).

52.     Brett again rehashes allegations "since 2013" for fraud and embezzlement of the estates and trusts, telling the same story and requesting the same relief that had been previously denied time and again.

53.     On August 25, 2023, in the Estate Action, Brett filed a very similar petition for removal of Lisa as trustee and Mr. McCullough as trust protector (attached as **Exh. "V"**). He added a request for a TRO for immediate removal.

54.     On August 31, 2023, the Estate Action Court, Judge Hruby-Mills presiding, denied the TRO request.

55.     Never to be deterred, the very next day, on September 1, 2023, back in the G/C Action, Brett filed a TRO petition seeking immediate removal of Lisa and Mr. McCullough from their respective trust positions (attached as **Exh. "W"**).

56.     On October 18, 2023, the Court, Judge Faust presiding over the Court's probate calendar, declined to exercise jurisdiction over the claims seeking relief against trustees as asserted in the G/C Action (a proceeding established for the administration of the conservatorship of Max's estate) and in the Estate Action (a proceeding established for the administration of Joyce's Estate). The objected-to petitions were referred back to the respective trial Courts. Brett was instructed by the Court to file any claims for relief arising from trust administration in a newly-filed trust proceeding.

57.     And yet, having been instructed on how to proceed (and how not to proceed), on October 25, 2023, Brett filed, in the G/C Action, a Petition for a Hearing and The Immediate Transfer of the Estate To A Corporate Fiduciary And For A Forensic Audit On Every Trust (attached as **Exh. "X"**), again seeking relief related to various trusts in the wrong proceeding.

58.     This petition is again purportedly brought (in the Max guardianship and conservatorship case) by Brett on behalf of "The Estate of Max and Joyce Eliason," and directed at the Church, Kirton, Parsons Behle & Latimer ("**Parsons**") (Brett's most recently terminated attorney-client relationship), and Judge Faust.

59.     The content of the petition is unintelligible in the relief sought, but by the caption purports to seek the "immediate transfer of the estate to a corporate fiduciary and for a forensic audit on every trust created by Kirton McConkie," again seeking trust-related relief in a case not initiated with or jurisdiction over the identified trusts.

60.     On October 26, 2023, Brett filed a new petition in the Utah Third Judicial District Court, Case No. 233902534 (the "**2023 Estate Action**") (attached as **Exh. "Y"**).

61.     The new 2023 Estate Action filing is nearly identical to the petition filed one day previously in the G/C Action, pleading the same relief against the same parties as his G/C Action Petition from the previous day.

62.     After initiating the 2023 Estate Action with the aforementioned petition (and without having effected service upon any of the defendants), Brett has filed in that case at least six additional motions seeking relief arising from the same, previously-pled and disposed of facts:

- First, on October 30, 2023, Brett filed a motion directed at Bryan P. Stephens and Stephens Management (not respondents in the originating petition in the 2023

Estate Action (attached as **Exh. "Z"**). This motion sought to compel the removal of these two motion respondents as CPA and to provide the ***trustee*** with accountings for the aforementioned ***trusts***. He continues to attack the 2013 estate planning documents and administration of Max and Joyce's estates that were previously litigated;

- Also on October 30, 2023, Brett filed another "motion", directed to "respondents" Kirton and Mr. McCullough, seeking to compel these respondents to provide Brett with legal counsel, yet again on the basis of the alleged embezzlement of the assets of Max and Joyce's estates (attached as **Exh. "AA"**);

- On November 14, 2023, Brett filed another "Request for a TRO Hearing" and accompanying motion to remove Kirton McConkie as counsel for all clients associated with Max, Joyce, and their trusts and estates (attached as **Exh. "BB"**), based on the same set of facts and circumstances;

- Also on November 14, 2023, Brett filed a motion to recognize Brett as trustee of enumerated trusts and to remove other trustees (attached as **Exh. "CC"**);

- On November 20, 2023, Brett filed a motion to admit evidence and to void the estate planning documents prepared by Kirton McConkie on behalf of Max and Joyce (attached as **Exh. "DD"**); and

- Also on November 20, 2023, Brett filed a motion to remove Jason Stephens as trustee and to appoint Cortland Ashton to represent Brett's family (attached as **Exh. "EE"**).

**<u>The 2023 Federal Action</u>**.

63.     On October 30, 2023, Brett filed a new complaint in the Utah Federal District Court, Case No. 2:23-cv-00785 (the "**2023 Federal Action**") (attached as **Exh. "FF"**).

64.     The 2023 Federal Action complaint again improperly attempts to name "The Estate of Max and Joyce Eliason and Max. D. Eliason" as plaintiffs, although the complaint is captioned with Brett as representing himself pro se in the action, and as "Trustee and Agent for Max D. Eliason" and is signed by Brett. As defendants, Brett names the Church, Kirton, Parsons, Judge Faust, Judge Shelby, and Judge Mow.

65.     Yet again, Brett, in this new complaint, alleges claims resulting from Kirton's representation of Max and Joyce in 2013, and all of the wrongs that he contends have been

perpetrated against him and his parents trusts and estates since that time – the same claims and

damages pled in each and every filing previously made by Brett dating back to 2019.

**Two New State Court Actions**.

66.     On November 14, 2023, Brett filed a new complaint in this Court, Case No.

230908673 (the "**Dissolution Action**") (attached as **Exh. "GG"**).

67.     By the Dissolution Action, Brett seeks to dissolve various business entities owned

and/or managed by persons who were the subject of Brett's prior-adjudicated lawsuits.

68.     Brett contends that he is entitled to the relief sought as a result of the same

allegedly fraudulent and conflict conduct associated with his prior failures to remove various

trustees and other persons from their roles vis a vis the trusts. Again, he seeks, amongst other

relief, the distributions previously sought by Brett's earlier pleadings and the "immediate

reversal of every document and transaction made by KMC Law [sic] and McCullough."

69.     On November 21, 2023, Brett filed another new complaint in this Court, Case No.

230908873 (the "**Malpractice Action**") (attached as **Exh. "HH"**).

70.     By the Malpractice Action, Brett seeks damages from Bryan Stephens, CPA.

71.     Bryan Stephens, CPA, was the accountant for the Trusts and the estates of Joyce

and Max.

72.     Brett previously sought damages and remedies for Bryan's activities in

connection with the accounting services for the Trusts and the estates in both the State Court

Action and the original Utah Federal Lawsuit.

**The Yet-unfiled Complaint**.

73.     On November 7, 2023, Brett had a constable appear at the offices of Kirton for the purpose of hand-delivering papers to Gregory Moesinger ("**Mr. Moesinger**").  *See* Declaration of Gregory S. Moesinger ("**Moesinger Decl.**"), dated December 31, 2019, at ¶ 2 filed concurrently herewith

74.     The delivery was purporting to attempt to serve process on Mr. Moesinger.  *Id*. at ¶ 3.

75.     The paper left for Mr. Moesinger was an unsigned, undated, and unfiled Complaint for Malpractice and Motion to Compel criminal prosecution (attached as **Exh. "II"**). Moesinger Decl. at ¶ 4.  Again, the purported-named plaintiff is The Estate of Max Eliason and Max D. Eliason, purportedly brought by Brett pro se.

76.     This claim is asserted against Mr. McCullough and Kirton.

77.     It merely restates the same allegations and accusations asserted throughout all of Brett's prior filings.

**The Impertinent Material**.

78.     On July 2, 2019, the State Court Action Court, Judge Mow presiding, held a hearing on a motion to dismiss and as Rule 16(b) status conference due to a series of filings by Brett. *See* Moesinger Decl. at ¶ 5.

79.     At that hearing, the defendants in that action expressed concern that Brett had repeatedly emailed some of those defendants and others at Kirton, including the firm president and other officers or shareholders of the firm, relating to the litigation. *Id*. at ¶ 6.

80.     The Court addressed the concern and further explained to Brett the importance of communicating only with those defendants' chosen counsel. *Id*. at ¶ 7.

81.     Brett agreed on the record that he would only communicate with the defendants' counsel, Mr. Hill and Mr. Moesinger, relating to the litigation. *Id*. at ¶ 8.

82.     The Court memorialized its order and Brett's agreement in the Order Granting Defendants' Motion to Dismiss or for More Definite Statement dated August 6, 2019 (the "Order"):

> Regarding matters related to this litigation, Brett Eliason agreed on the record <u>and is otherwise ordered</u> to direct any and all communications between him and the Defendants through Defendants' counsel of record, Christopher S. Hill and Gregory S. Moesinger; and Brett Eliason shall not contact other individuals at Kirton McConkie.

(Order at ¶ 7 (emphasis added), attached as **Exh. "JJ"**). *See* Moesinger Decl. at ¶ 9.

83.     Ignoring that order, Brett sent at least the following emails directly to certain defendants in that matter (*i.e.*, Mr. McCullough, Bryan, and Lisa,) or other individuals at Kirton (*i.e.*, Lee Wright, president of Kirton McConkie).  *E.g.*, **Exh's. "KK", "LL", "MM", "NN", and "OO"**. *See* Moesinger Decl. at ¶ 10.

84.     The emails have become increasingly aggressive and threatening over time:

> You my dear Kirton McConkie McConMe's [sic] gave Lisa the rights to everything and yet you have nothing to prove you could.....<u>I will go to my grave doing to you as you have done unto me; take everything you owned</u>.

(**Ex. "KK"** at 1 (emphasis added).)

> I am demanding a 10-day injunction hearing with the associated relief irregardless [sic] of your opinions . . . . Within that injunction will be a request to Judge Mow for the appointment of as many District Attorneys as it takes to ensure that this is an action considered <u>'EXTINCTION" for KMC Law and the fucking Board of Directors</u> who failed my family and dismissed my screams for help with a "he is insane" and his father "incompetent' determination.

(**Ex. "LL"** at 1-2 (emphasis added).)

> You pieces of shit do not even posses [sic] one document that provides you the right to represent Lisa as Trustee or Personal Representative let alone my felon brother in law who bought your service to abuse and exploit my parents...But you seem to have no worries about conflict of interest laws now do you since you also represent Bryan (whom you were never to speak to), Mark (who as with Lisa has no more rights than the other two siblings) and Laurie who ya slapped in as replacement Trustee on LLC's even?

> Whoa...you bitches use some wicked ass black magic in them there Temples of Dallin and his fucking Dicks like you sluts that he plays with at will...

> \*\*\*

> <u>Eat shit and die a slow death</u> marred by some greedy ass in law who buys his in-laws estates with ease; because Dallin's Dicks say yes if the laws of god and man say no!

(**Ex. "MM"** at 1-2 (emphasis added).)

> It's always fun and games until you realize that you just redefined the definition for "how to use that sadistic fetish of torturing someone who loved you" and turning it into "every generation that follows with the name of Bryan and Lisa Stephens" will say "how could they be so stupid and <u>risk their lives and those of their own kids</u> for the thrill of tossing mom's favorite into a "Truman Show meets <u>Elm Street</u>"[2]....

> \*\*\*

> I shall do no worse to you and your kids than you did to me and mine...

(**Ex. "NN"** at 1 (emphasis added).)

Movants emphasize that these communication excerpts are a small portion of the entire litany of epithets that were all transmitted by Brett to multiple defendants and/or Kirton attorneys <u>other than</u> counsel of record with whom Brett was permitted to communicate.

---

[2] Presumably a reference to the horror films, "Nightmare on Elm Street."

85.     In an email dated December 29, 2019, Brett emailed Lisa and Bryan the following

with an attached picture and the word "**REDRUM**" (or MURDER backwards)[3] in red:

> <u>YOU DUG YOUR OWN GRAVES</u>; LAY THEREIN FOR ETERNITY AND LET YOUR SOULS BURN FOR REDEFINING EVIL WHILE DESTROYING EVERY MEMBER OF THE FAMILY INCLUDING YOUR OWN GENERATIONS WHO SHALL FOREVER CALL YOUR NAMES CURSED...YOU BETRAYED EVERYTHING MAX AND JOYCE STOOD FOR AND BET AGAINST THERE BEING A GOD THAT WOULD NEVER ALLOW SUCH WICKED SOULS TAKE OUT GENERATIONS OF ANCESTORS RIGHTEOUS TOIL AND WORK.  JOYCE, LARRY, AND LYDIA STAND BY MY SIDE IN BIDDING YOU BOTH AN EVERLASTING ADIEU.
>
> I'LL TOSS IN MY OWN FUCK YOU BITCHES FOR BETRAYING EVERYONE THAT LOVED YOU...



(**Ex. "OO"** at 1-3 (caps in original).)

86.     In Judge Mow's February 20, 2020, Ruling and Order in the State Court Action

(**Exh. "C"**), the Court found that Brett's combined opposition to the motion to dismiss and

---

[3] Presumably a reference to the horror film, "The Shining."

motion to amend his pleading was "replete with immaterial, impertinent, and scandalous matters." *Id*. at p.4.

87.    The Court cited the following as examples of such material:

- "Max and Joyce Eliason and the Plaintiff Brett L. Eliason were brought into the Office of 'The Lawyers of Jesus Christ Himself' like lambs to the slaughter."
- "Rather than making one effort of 'good faith' which one would expect from the 'Lawyers of Jesus Christ Himself'; the attorneys which were anointed and who blessed [sic] by Dallin H. Oaks have reacted as 'The Hell′s Angels.'"
- "Lisa Stephens in conjunction with Bryan Stephens and Craig McCullough sought to have Joyce S. Eliason 'put down' immediately after executing the fraudulent document."
- "Craig McCullough and Kirton McConkie have knowingly been participating in the raping and pillaging the [sic] Estates of Max and Joyce Eliason."
- "[A] protected class of individuals which would include the elderly and certainly a dying 84-year-old Joyce S. Eliason and an 85-year-old Max D. Eliason whom [sic] is still being 'protected' by his and his wife's rapists."

88.    The Court ruled that "[t]hese statements are impertinent and immaterial to any issue raised in Defendants' Motion to Dismiss. Furthermore, the statements are scandalous in that they impugn the character of various parties to this litigation, and they do not provide factual support for the claims asserted in Plaintiff's Amended Complaint." *Id*.

89.    Lest there be any belief that Brett has toned down his rhetoric or improper accusations, 2023 filings by Brett contain the following:

- "[T]hese respondents are each concealing the murder of my dear mother… fully aware that Lisa Stephens and Craig McCullough administered lethal doses of morphine…." (Oct. 25, 2023 petition in G/C Action (Exh. "X"), p.3;
- "It is alleged that Judge Faust has been instructed by the First Presidency of the Church of Jesus Christ of Latter-Day-Saints [sic] to protect the religion for which his own father James T. Faust served as a member of the Quorum of The Twelve Apostles for the LDS Church." *Id*. at p. 4;
- "KMC Law [sic] has now targeted my life for demise…." *Id*. at p.5.

# ARGUMENT

## I.  LEGAL STANDARD

Rule 83 of the Utah Rules of Civil "authorizes a court to impose restrictive orders on vexatious pro se litigants. The purpose of such orders is to curb the litigant's vexatious conduct." *Strand v. Nupetco Associates*, 397 P.3d 724, 725 (Utah Ct. App. 2017). Courts may find litigants to be vexatious *sua sponte* or on motion of any party. *See* UTAH R. CIV. P. 83(b).

Under Rule 83, the Court is authorized to enter an order against a vexatious litigant requiring them to:

> (1) furnish security to assure payment of the moving party's reasonable expenses, costs and, if authorized, attorney fees incurred in a pending action;

> (2) obtain legal counsel before proceeding in a pending action;

> (3) obtain legal counsel before filing any future claim for relief;

> (4) abide by a prefiling order requiring the vexatious litigant to obtain leave of the court before filing any paper, pleading, or motion in a pending action;

> (5) abide by a prefiling order requiring the vexatious litigant to obtain leave of the court before filing any future claim for relief in any court; or

> (6) take any other action reasonably necessary to curb the vexatious litigant's abusive conduct.

UTAH R. CIV. P. 83(b).

In order to enter any such orders, the Court must find that:

> (A) the party subject to the order is a vexatious litigant; and

> (B) there is no reasonable probability that the vexatious litigant will prevail on the claim.

*Id.* at 83(c).

Finally, a person is a "vexatious litigant" if they do *any* of the following:

(A) In the immediately preceding seven years, the person has filed at least five claims for relief, other than small claims actions, that have been finally determined against the person, and the person does not have within that time at least two claims, other than small claims actions, that have been finally determined in that person's favor.

(B) After a claim for relief or an issue of fact or law in the claim has been finally determined, the person two or more additional times re-litigates or attempts to re-litigate the claim, the issue of fact or law, or the validity of the determination against the same party in whose favor the claim or issue was determined.

(C) In any action, the person three or more times does any one or any combination of the following:

(i) files unmeritorious pleadings or other papers,

(ii) files pleadings or other papers that contain redundant, immaterial, impertinent or scandalous matter,

(iii) conducts unnecessary discovery or discovery that is not proportional to what is at stake in the litigation, or

(iv) engages in tactics that are frivolous or solely for the purpose of harassment or delay.

(D) The person purports to represent or to use the procedures of a court other than a court of the United States, a court created by the Constitution of the United States or by Congress under the authority of the Constitution of the United States, a tribal court recognized by the United States, a court created by a state or territory of the United States, or a court created by a foreign nation recognized by the United States.

*Id*. at 83(a)(1).

## II. BRETT IS A VEXATIOUS LITIGANT

Under Rule 83(a)(1), a person is a vexatious litigant if they have undertaken any of four specified actions. Here, Brett has undertaken three of those four actions, rendering him well-qualified to be deemed vexatious.

**A. Brett is a vexatious litigant under U.R.C.P. 83(a)(1)(A) because courts have issued final determinations more than five times against Brett's claims and no claims determined in his favor.**

As outlined above, Brett has filed no less than six actions that have been finally determined against him:

- The State Court Action;
- The Utah Federal Lawsuit;
- The Colorado Federal Lawsuit;
- The Hawaii Federal Lawsuit;
- The Texas Federal Lawsuit;
- The Utah Supreme Court Case; and
- The 2019 Business Lawsuit.

*See.* **Exh's "A" through "C" and "G" through "S"**. Each of these lawsuits filed by Brett were dismissed, with no relief granted to him.

It is immaterial that some of these suits were dismissed without prejudice. In Utah, an order of dismissal, whether with or without prejudice, is a final determination:

> Utah has adopted the majority rule that an order of dismissal is a final adjudication, and thereafter, a plaintiff may not file an amended complaint ...." This is true "even though the dismissal was without prejudice." So when all the claims in a case have been dismissed the case is ended "as far as the district court [is] concerned," and, absent a reversal and remand by the appellate court, the plaintiff can only reassert claims that were dismissed without prejudice by commencing a new action. This is an important aspect of our pragmatic approach to the final judgment rule. In other words, under our pragmatic approach to the final judgment rule, we treat dismissals, either with or without prejudice, as final orders that have the effect of fully terminating the action and rendering an appealed order a final order.

*WDIS, LLC v. Hi-Country Ests. Homeowners Ass'n*, 2019 UT 45, ¶ 23, 449 P.3d 171, 177–78 (internal citations omitted). *See also*, *Attias v. Carefirst, Inc.*, 865 F. 3d 620, 624-25 (D.C. Cir. 2017) for federal cases. Thus, the seven dismissals cited above meet the Rule 83(a)(1)(A) criteria for Brett to have five finally-determined claims adjudicated against him in the prior seven years.

Moreover, to highlight the abuse of the legal system employed by Brett, he has filed at least two additional requests for relief in probate cases which were adjudicated against him and constituted final determinations:

- July 5, 2019, motion to contest dismissal of plaintiff's rights in the G/C Case (**Exh. "D"**);
- August 12, 2020, motion to compel appointment of receiver to audit trusts and remove trustee in the Estate Case (**Exh's. "E" and "F"**);

While these motions were adjudicated in existing probate proceedings, they qualify as final determinations as to him. Utah follows a "pragmatic, case-by-case approach to finality in probate matters…." *In re Est. of Strand*, 2012 UT App 144, ¶ 2, 281 P.3d 268, 269. When an order decides the "real issue between the parties," it is final and appealable despite the probate court's continuing 'jurisdiction ... to adjudicate further matters resulted in finality for the purposes of this appeal.'" *Id*., quoting *In re Estate of Voorhees*, 366 P.2d 977, 980 (1961). The orders denying Brett's requested relief in the two motions brought in probate actions in 2019 and 2020 did decide the issue between Brett as movant/petitioner and the parties against whom he complained therein. Thus, Brett has accumulated nine total dismissals of claims finally adjudicated against him.

Additionally, Brett has not filed at least two claims that have been finally determined in his favor. Movants, through counsel, have searched the state court database and been unable to

23

locate any actions filed by Brett that have resulted in a final adjudication in his favor. *See* Moesinger Decl., ¶ _.

Thus, by the plain terms of Rule 83(a)(1)(A), Brett is a vexatious litigant.

**B. Brett is also a vexatious litigant under U.R.C.P. 83(a)(1)(B) because on no less than 24 occasions Brett has attempted to re-litigate the claims, issues of fact, and issues of law determined against him in the State Court Action.**

Brett may be proven to be a vexatious litigator under the second prong of Rule 83, independently of the first prong, upon a showing that after a final determination against him on a claim or issue, Brett has attempted to relitigate that claim or issue against the same party two or more times. U.R.C.P. 83(a)(1)(B). Unlike the first prong, which requires Brett to have filed at least any five claims that reached conclusion (whether related or not), this prong only requires one claim finally adjudicated if the subsequent two or more additional filings are attempting to relitigate the same issue adjudicated once before. Plaintiff is clearly a vexatious litigant under this prong as well.

Judge Mow's Ruling and Order in the State Court Action establishes the predicate for claims, issues of fact, and issues of law determined against Brett. *See* **Exh. "C"**. Under consideration by the Court was both the operative pleading and Brett's motion to amend to join over one hundred defendants and assert 35 causes of action all arising from the actions taken by these persons relating to the administration of Joyce and Max's trusts and estates. Every claim and issue pursued thereafter by Brett has attempted to relitigate that outcome. In that lawsuit, Brett attempted to litigate all of these facts and issues against all of the current Movants – Lisa, Mr. McCullough, Kirton, Bryan, the Church – and multiple other parties. In the Court's Ruling and Order, all of those claims against all of those parties were dismissed with prejudice.

Every single one of the subsequent filings by Brett listed above – no less than 24 subsequent complaints, petitions, and/or motions cited and attached hereto – attempts to relitigate that final Ruling and Order dismissal. Each starts with the core that Brett seeks to attack the Movants for their roles dating back to 2013 in the amending of Max and Joyce's estate planning documents and the subsequent administration of the estates and trusts, including the businesses owned and/or managed by these trusts. Each seeks to wrest control back to Brett of the estates, trusts, and assets of Max and/or Joyce. Each claims to seek damages against these same Movants for the same claims, relief and harms that were adjudicated in the State Court Action.

These filings meet the requirement under the second prong of Rule 83 to declare Brett to be a vexatious litigator.  U.R.C.P. 83(a)(1)(B).  This Court should therefore hold that Brett is a vexatious litigator.

**C. Brett is also a vexatious litigant under U.R.C.P. 83(a)(1)(C) because on many occasions Brett has filed unmeritorious papers or papers that contain redundant, immaterial, impertinent or scandalous matter, or has engaged in frivolous tactics solely for the purpose of harassment or delay.**

Brett has also run afoul of the third prong of Rule 83 in several different instances.

Judge Mow has already ruled that Brett's filings in the State Court Action were "replete with immaterial, impertinent, and scandalous matters. February 20, 2020, Ruling and Order in the State Court Action (**Exh. "C"**) at p.4.

All of the 24 attempts to relitigate prior rulings are redundant and unmeritorious papers. A quick scan of these filings show that many of them are cut-and-paste jobs of large sections of one portion or another from prior-filed documents. The relief sought is redundant. The grounds for relief are all redundant. Brett's litany of filings wastes both party and court resources

tracking, filing, managing, and responding to these many overlapping matters. These tactics have

no legitimate basis and accomplish nothing but harassment of the multiple various defendants.

Further, Brett continues to submit additional impertinent and scandalous material. In

addition to Judge Mow's ruling that his court filings contained improper material, the Court also

found that Brett was harassing non-parties through his offensive and impertinent

communications. After being ordered to communicate *only through counsel* (Order at ¶ 7 at **Exh.**

**"JJ"**), Brett continued to email other persons directly containing messages with vulgarity and

threats of physical and economic harm. *See* **Exhs. KK through OO**. More recently, in the G/C

Action Brett filed papers accusing (without support) the parties thereto to have participated in the

murder of Joyce, to have conspired in the cover-up of that crime, to be endangering Brett's own

life, and to be conspiring with the judiciary to manipulate all of the cases against Brett. **Exh.**

**"X"**, pp. 3-5. These accusations are baseless, damaging, disparaging, and definitely impertinent

and scandalous. And without any corroboration or supporting evidence, there is no good faith or

reasonable basis for which the matters should have been filed in the public files of this Court's

dockets.

This Court can therefore hold that Plaintiff is a vexatious litigator under the third prong

of Rule 83.

### III.   THERE IS NO REASONABLE PROBABILITY THAT BRETT WILL PREVAIL ON ANY PENDING CLAIM.

In addition to finding that Brett is a vexatious litigant, the Court must find that there is no

reasonable probability that Brett will prevail on his claim(s) to enter the orders for relief sought

against him. UTAH R. CIV. P. 83(c). Because Brett's claims are all barred by the doctrine of *res*

*judicata* and applicable statutes of limitations, amongst numerous other defenses, this Court can easily find no reasonable probability of Brett prevailing.

Independent of any other bases, res judicata precludes Brett from pursuing all of his currently pending actions and petitions. In the State Court Action, Brett attempted to amend his Second Amended Complaint to dozens of defendants, including all targets of his current matters, to assert essentially the same allegations as included now and to raise near identical causes of action. The vast majority of Brett's current crop of pleadings are a cut and paste of his proposed pleading that was rejected in the State Court Action. On February 20, 2020, the State Court denied and struck Brett's Motion to Amend on procedural and substantive grounds. (See Ruling and Order at 2-6; **Exh. "C"**.) That ruling bars Plaintiffs' claims now.

### A. Res Judicata Bars Those Claims Adjudicated in the State Court Action.

Under res judicata, when a final judgment has been entered on the merits of a case, "[i]t is a finality as to the claim or demand in controversy" and "puts an end to the cause of action, which cannot be brought into litigation between the parties upon any ground whatever." *Nevada v. U.S.*, 463 U.S. 110, 129-30 (1983). Accordingly, "[it] bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.*, 440 U.S. 147, 153 (1979).

Res judicata or claim preclusion applies when the following elements are satisfied: "(1) both suits must involve the same parties or their privies, (2) the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action, and (3) the first suit must have resulted in a final judgment on the merits." *Moss v. Parr Waddopus Brown Gee & Loveless*, 2012 UT 42, ¶ 21, 285 P.3d 1157. "[A] person in privity with another, is a person so identified in interest with another that he represents the same legal

27

right." *Press Pub., Ltd. V. Matol Botanical Int'l, Ltd.*, 2001 UT 106, ¶ 20, 37 P.3d 1121

(identifying officers or owners of a closely held corporation, partners, or agents are in privity

with each other); *see Hansen v. Bank of New York Mellon*, 2013 UT App 132, ¶¶ 7-10, 303 P.3d

1025 (determining that a beneficiary under a trust deed represented the same legal interests as

did the trustee under the trust deed in a prior federal suit and were in privity).

It is not necessary that the causes of action be exactly the same in both lawsuits; they just

need to arise out of the same general allegations. *Madsen v. JPMorgan Chase Bank, NA*, 2012

UT 51, fn. 2, 296 P.3d 671 ("We here clarify that a resolution of the merits of a specific claim

raised in a subsequent action is not a required element of claim preclusion.")

Courts look at a "transactional test" for res judicata in determining whether it was

litigated, which is that "a claim arising out of the same 'transaction, or series of connected

transactions as a previous suit, which concluded in a valid and final judgment, will be

precluded." *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006). Courts are to

consider "whether the facts are related in time, space, origin, or motivation." *Hatch*, 471 F.3d at

1149; *see Massey v. Bd. Of Trustees of Ogden Area Cmty. Action Comm., Inc.*, 2004 UT App 27,

¶¶ 8-12, 86 P.3d 120 (applying res judicata where "the federal suit and the state suit clearly were

based on the same facts – the termination of Massey's employment by the Board" and the facts

"are related  in time, space, origin, and motivation, and form a convenient trial unit"); *see also*

Restatement (Second) of Judgments § 25, Comment d. (1982) (plaintiff cannot seek the same or

approximately the same relief but adducing a different substantive law).

The claims adjudicated in the State Court Action are demonstrably the same as the many

pleadings and petitions currently on file by Brett. His allegations are the same. While he no

longer enumerates or names his causes of action, he regurgitates the same underlying facts and the same modes of relief previously sought and denied. Upon the filing of a motion to dismiss in every one of the currently pending cases, this Court (and the Federal Court) will be faced with a clear application of the doctrine of res judicata in dismissing each of Brett's multitude of claims.

**B. Res Judicata Applies to the Claims Attempted in the State Court Action Motion to Amend.**

The principles of res judicata barring these claims applies even though Judge Mow dismissed the State Court Action without granting leave to plead Brett's amended complaint.

"[D]enial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." *Prof'l Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1032-33 (8th Cir. 2003). While neither Utah courts nor the Tenth Circuit Court of Appeals have addressed this issue in a published opinion, many other circuit courts of appeal have. *See e.g., Arrigo v. Link*, 836 F.3d 787, 799 (7th Cir. 2016) ("To allow the second lawsuit to continue would render meaningless . . . the district court's denial of [the] motion for leave to amend to add the same claims"); *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 399–400 (2d Cir. 1997); *Huck on Behalf of Sea Air Shuttle Corp. v. Dawson*, 106 F.3d 45, 49-50 (3d Cir. 1997); *Qualicare–Walsh, Inc. v. Ward*, 947 F.2d 823, 826 (6th Cir.1991). This line of authorities is consistent with the Restatement (Second) of Judgments, which states "It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late." Restatement (Second) Of Judgments § 25, Comment b.

In *Hatch v. Trail King Indus. Inc*., the court explained the rationale – the plaintiff must appeal the decision of the first court in denying the motion to amend:

It is axiomatic that "claim preclusion doctrine requires [a party] to live with [its strategic] choices." Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 11 (1st Cir. 2010). Those strategic choices include whether to attempt to amend a complaint and whether to appeal a denial of such an attempt. When a party chooses to move for leave to amend its complaint and then not to appeal denial of that motion, the party "is not entitled to a second opportunity [in a later action] to litigate [the] claim" that the party sought to add. Id. at 16. Instead, the party's "recourse [is] to appeal, not to start a new action." Id.; Johnson v. SCA Disposal Servs. of New Eng., Inc., 931 F.2d 970, 976 (1st Cir. 1991) ("It is widely accepted that appeal is the plaintiff's only recourse" where a motion to amend is denied as untimely).

699 F.3d 38, 45-46 (1st Cir. 2012). The court continued:

> This is a well-accepted principle. As described by commentators, "It appears well-settled . . . that claim preclusion bars a second action on the part excluded from the first action. This result is sound. The abstract theory that amendment should be freely allowed is widely honored in practice. There is likely to be good reason when the court that has control of the first action concludes that a party should not be allowed to advance matters so closely related to the action as to be part of a single claim. Unless the court can be persuaded to direct that denial of leave to amend is without prejudice to advancing the new matter in a separate action, preclusion should apply. Any error should be corrected by appeal in the first proceeding."

Id. (citing 18 Wright & Miller, Federal Practice and Procedure § 4412 (footnotes omitted)).

In an unpublished opinion, the Tenth Circuit Court of Appeals issued a decision in line with the other circuits. See Parkins v. Patterson, 215 F.3d 1337 (table), 2000 WL 639704 (10th Cir. 2000). In Parkins, plaintiffs had argued that because the defendants in the complaint were all different than the defendants attempted in the attempted amended pleading, "dismissal with prejudice has no res judicata effect on the Defendants in the second action." (Id. at *3) In affirming the district court's decision that res judicata barred the second lawsuit, the court reasoned, "the first action ended with a judgment on the merits" and the plaintiffs "moved to amend their complaint [to add defendant Patterson]." Id. When that motion to amend was denied, "[p]laintiffs' remedy was to appeal, not file a new action in the district court." Id.

And of course, Brett has previously presented these claims to the Utah Federal Court in the Federal Court Action, which was dismissed with prejudice in 2020. *See* **Exh. H**.

**C. Brett Cannot Prevail on His Claims as They are Time Barred.**

Moreover, Brett cannot overcome an apparent statute of limitations bar to his claims. While he does not include dates of alleged wrongdoing in his various court filings, it is clear that the actions complained of had to have occurred prior to his March 6, 2019, initiation of the State Court Action. That same conduct alleged then forms the basis for his claims of wrongdoing now. It is more than four years stale. It is thus time barred.

The relief sought by Brett is not based on any written contract that he has with any of the defendants or respondents in any pending action. All of his claims arise from common-law duties, fiduciary duties, fraud, malpractice, or other similar tort-based claims. In Utah, the applicable statute of limitations for malpractice is four years (Utah Code § 78B-2-307(3)), for fraud is three years (*Id*. at § 78B-2-305(3)), and for the other claims is also four years (*Id*. at § 78B-2-307(4)). None of these claims survive the gap since first pled in March 2019, which is more than four years ago.

Brett is now trying to ignore all of the previous adverse rulings and judgments against him and his claims. Res judicata and/or statutes of limitations will bar all of these claims in all of these actions, not to mention individual defenses against the substantive merits of his failed claims. There is no reasonable probability under these facts and procedural postures that Brett can prevail on any of his claims. Thus, as a vexatious litigant, this Court can and should impose sanctions and other restrictions against Brent for his conduct.

IV.    **THE COURT SHOULD REQUIRE BRETT AS A VEXATIOUS LITIGANT TO FURNISH SECURITY, OBTAIN LEGAL COUNSEL, AND PETITION THE COURT FOR LEAVE BEFORE FILING ANY ADDITIONAL PAPERS EITHER IN THIS PROCEEDING OR IN ANY FUTURE PROCEEDING BEFORE THE DISTRICT COURTS OF UTAH.**

Upon finding Brett to (i) be a vexatious litigant, and (ii) have no reasonable probability that he will prevail on his claims, (U.C.R.P. 83(c)(1)(B)), this Court has the power to take appropriate measures to limit Brett's ability to abuse the legal system. Movants request that the Court enter and order against Brett requiring that he (1) furnish security in the amount of $50,000.00 to assure payment of the Movant's reasonable expenses, costs and attorneys' fees in this and all currently pending actions filed by Brett together with an additional security deposit requirement on new complaints or probate petitions, before opening any such matter, in the amount of an additional $25,000.00 per filing; (2) obtain legal counsel before proceeding in any pending action against any of the Movants or related persons; (3) obtain legal counsel before filing any future claim for relief in this or any other Court; (4) abide by a prefiling order requiring Brett to obtain leave of the Court before filing any paper, pleading, or motion in any pending action for which Brett is a party; and (5) abide by a prefiling order requiring Brett to obtain leave of the Court before filing any future claim for relief in any court. All such actions are authorized by Rule 83(b) of the Utah Rules of Civil Procedure and are warranted by Brett's conduct.

A.    **Brett should be required to furnish security to assure payment of Movants' reasonable expenses, costs, and attorney fees in the pending action and in future actions in Utah District Courts.**

Rule 83 specifically empowers the Court to require Brett to "furnish security to assure payment of the moving party's reasonable expenses, costs and, if authorized, attorney fees

32

incurred in a pending action…." U.R.C.P. 83(b)(1). This rule-based remedy is a natural corollary to a larger, common-law basis for fee awards against vexatious litigants. In *Alyeska Pipelines Co. v. Wilderness Society*, 421 U.S. 240, 259 (1975), the U.S. Supreme Court held that "... a court may assess attorneys' fees ... when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons....'". *Id. See also Hall v. Cole*, 412 U.S. 1, 5(1973); *Serrano v. Priest,* 20 Cal.3d 25, 42 (1977); *D'Amico v. Board of Medical Examiners*, 11 Cal.3d 1, 26 (1974).

Utah statute imposes attorneys' fees penalties against bad faith litigants: "In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith…." Utah Code § 78B-5-825(1). Here, the overwhelming number of court filings by Brett, across multiple proceedings, in multiple jurisdictions and forums, attempting to relitigate the same issues that have been decided against him, with prejudice, and more than once, evidences the bad faith nature of Brett's litigation conduct. Some of these filings currently do require responses, and many more may over time, wasting Court and party resources due to Brett's disruptive litigation conduct.

In addition, were Brett to continue filing papers after the entry of Movant's requested order herein, such would be in violation of the authority of this Court, further warranting attorney fee sanctions for any and all such subsequently-filed materials not conforming to this Court's direction. Such would be continued bad faith and vexatious litigation conduct.

Brett presents a special risk beyond that of an average plaintiff of imposing unwarranted legal costs on not only Movants but also other future innocent defendants. He has demonstrated a

long pattern of ignoring Court rulings that go against him, only to refile the same redundant material in multiple courts, and each time adding new targets of his ire, including the judges who ruled against him and his attorneys who refused to continue participating in his improper conduct. This demonstrates the heightened danger to Movants and others of allowing Brett to continue to file new vexatious lawsuits in Utah Courts without first posting security to ensure that future potential defendants are not left holding the bill for any more of Brett's abuse of the legal system. Such an expanded security requirement would go beyond U.C.R.P. 83(b)(1), but under the particular circumstances of this case it would still qualify as an appropriate use of the Court's power under U.C.R.P. 83(b)(6) to "take any other action reasonably necessary to curb [Brett's] abusive conduct." Thus, this Court should order that security be posted in a reasonable amount, requested at $50,000.00, to be used as source of recovery for defendants in this and all currently pending actions filed by Brett for costs and fees to be awarded therein, together with an additional security requirement on new complaints or probate petitions, before opening any such matter, in the amount of an additional $25,000.00 per filing.

**B. Brett should be required to obtain legal counsel before proceeding in this action, all pending actions, or filing any future claim for relief in the district courts of Utah.**

Past experience has proven that the presence of legal counsel helps restrain Brett's tendencies to abuse the legal process that manifest themselves almost without fail when he appears pro se. For example, in the State Court Action, up to the point at which counsel withdrew, Brett's filings were neither excessive nor abusive. However, once counsel withdrew and Brett was left to represent himself, Brett proceeded to seek leave to amend his complaint to an unmanageable degree against over 100 potential defendants, and defended that lawsuit with

filings that Judge Mow found to be "replete with immaterial, impertinent, and scandalous matters." **Exh. C.** at p.4.

Similarly, when the 2023 Business Lawsuit commenced, Brett was represented by counsel. Although the Complaint filed therein is subject to pending motions to dismiss or for more definite statements, the allegations of the initial filings by counsel were limited in the scope of how egregious the content of filed papers were. However, it was when Brett filed papers in other matters around his counsel, and then ultimately terminated his counsel relationship, that the flood gates opened with his 2023 deluge of improper and impertinent filings. Once legal counsel withdrew, Brett's subsequent filings in all actions of his pending actions (and new ones) ballooned to include the usual list of unrelated defendants and irrelevant factual allegations. Additionally, in the pending matters, Brett has recommenced his pro se practice of filing his usual litany of frivolous and redundant motions in an attempt to relitigate the prior final judgment. A review of Brett's litigation history indicates that legal counsel is a necessary (although perhaps not sufficient) check on Brett's otherwise overwhelming inclinations to abuse the legal process.

C.  **Plaintiff should be required to obtain leave of the court before filing any additional paper in this action or any future action in the district courts of Utah.**

It is clear that Brett lacks a basic understanding of both the purpose of and consequences from the legal system. He treats the Courts as his bullhorn and bully stick. When he does not like the results, he doubles down with multiple new filings, and adds the responsible judges and his own prior counsel to his collection of grievances. But it always comes back to shoehorning all of his repackaged claims into facilitating allowing the original targets of Brett's agenda, these Movants, to implement Max and Joyce's estate plans to the chagrin of Brett. Brett does not

accept "no" as an answer from the courts (although he is presumably ready to stop if he were to

ever have gotten a favorable ruling).

Given Brett's refusal to stop the deluge of Court filings and abuse, nothing is likely to

deter Brett's vexatious course of litigation more than stopping new filings at their inception. This

Court should take full advantage of the remedies available under Rule 83 by issuing a prefiling

order requiring Plaintiff to petition this Court for leave to file any additional papers in this

proceeding or any other proceeding in a Utah District Court.  U.R.C.P. 83(b)(1)(4), 83(b)(1)(5);

*see also Johnson v. Stock*, 03-4219, 2005 WL 1349963 (10th Cir. June 8, 2005) (imposing filing

restrictions on a plaintiff who had filed numerous frivolous suits and was undeterred by prior

sanctions from other courts).

## V.    IN ADDITION TO THE PROCEDURES AVAILABLE UNDER RULE 83, THIS COURT ALSO HAS INHERENT POWER TO IDENTIFY BRETT AS A VEXATIOUS LITIGANT AND TAKE APPROPRIATE MEASURES IN RESPONSE.

Not only has the Utah Supreme Court authorized actions against a vexatious litigant

under the specific procedures of Rule 83, but this court also retains inherent power to deal with

vexatious litigants as necessary to provide for justice. "The courts of this state possess the

powers necessary to maintain the orderly disposition of matters brought before them, including

the power to levy sanctions and, in appropriate cases, to hold in contempt the parties who appear

before them."  *Lundahl v. Quinn*, 2003 UT 11, ¶4, 67 P.3d 1000; *see also Gardiner v. York*, 2010

UT App 108, 233 P.3d 500, 509 cert. denied, 238 P.3d 443 (Utah 2010) (reaffirming "the

prerogative of trial courts to use the contempt power and other appropriate remedies to maintain

order in matters that come before them"). If necessary to maintain order in the instant case or

other future cases, this Court should go beyond the specific procedures of Rule 83 where necessary to administer justice with regard to Brett's vexatious litigation.

Utah courts have expressly held that sanctions are appropriate in the event "(1) the party's behavior was willful; (2) the party has acted in bad faith; (3) the court can attribute some fault to the party; or (4) the party has engaged in persistent dilatory tactics tending to frustrate the judicial process." *Morton v. Continental Baking Co.*, 938 P.2d 271, 276 (Utah 1997) (emphasis added). Courts of general jurisdiction possess inherent powers to impose monetary and other sanctions on parties. *See Barnard v. Wasserman*, 855 P.2d 243, 249 (Utah 1993). "District courts have broad discretion to determine if a party's conduct justifies the imposition of sanctions and, if so, which sanction is appropriate to the circumstances." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 11, 328 P.3d 880, 883; *see also Gorostieta v. Parkinson*, 2000 UT 99, ¶ 131, 17 P.3d 1110.  An award of sanctions is within the discretion of the trial court and is not overturned unless an abuse is clearly shown. *Henshaw v. Henshaw*, 2012 UT App 56, ¶ 25, 271 P.3d 837.

Given Brett's aggressive, abusive, and harassing emails to the Movants, particularly after his agreement and being expressly ordered to only communicate with the Defendants' counsel, the Court should enter an order for the Plaintiff to appear and show cause why he should not be held in contempt and sanctioned in an appropriate amount. The appropriate sanctions may include, but not be limited to, striking Brett's pleadings and dismissing his claims asserted in this action and his other proceedings in this Court with prejudice, further and broader orders prohibiting all communications by Brett to Defendants, a civil stalking injunction order, and a monetary penalty. The Plaintiff has shown a complete disrespect for the judicial process and the rule of law. Furthermore, the Court should take any and all other action as appropriate under the

circumstances, including for the safety of the Defendants; and the Court should retain

jurisdiction to enforce its orders against Brett.

## **CONCLUSION**

For the reasons set forth herein, the Court should enter an order finding Brett to be a

vexatious litigant and requiring Brett to: (1) furnish security in the amount of $50,000.00 to

assure payment of the Movant's reasonable expenses, costs and attorneys' fees in this and all

currently pending actions filed by Brett together with an additional security deposit requirement

on new complaints or probate petitions, before opening any such matter, in the amount of an

additional $25,000.00 per filing; (2) obtain legal counsel before proceeding in any pending

action against any of the Movants or related persons; (3) obtain legal counsel before filing any

future claim for relief in this or any other Court; (4) abide by a prefiling order requiring Brett to

obtain leave of the Court before filing any paper, pleading, or motion in any pending action for

which Brett is a party; and (5) abide by a prefiling order requiring Brett to obtain leave of the

Court before filing any future claim for relief in any court. Further, the Court should enter an

Order to Show Cause against Brett as to why additional monetary sanctions should not issue

against Brett for his willful, wanton, and egregious vexatious behavior in these actions.

DATED this 29th day of December, 2023.

KIRTON McCONKIE, PC


By: s/Christopher S. Hill
    Christopher S. Hill
    Gregory S. Moesinger
Attorneys for Kirton McConkie PC, Craig McCullough,
Lisa Stephens, Mark Eliason, Laurie Eliason, Bryan
Stephens, Eliason Enterprises, LLC, and The Corporation
of the President of The Church of Jesus Christ of Latter-day
Saints

38

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2023, a true and correct copy of the

foregoing **DEFENDANTS' MOTION TO DECLARE BRETT L. ELIASON A**

**VEXATIOUS LITIGANT** was served on the following by the method indicated below:

Brett L. Eliason                              (**X**) U.S. Mail, Postage Prepaid
43 So. Fairway Drive                       (  ) Hand Delivered
North Salt Lake, Utah  84054            (  ) Overnight Mail
                                               (  ) Facsimile
                                               (**X**) E-mail:
                                               brett.eliason1@gmail.com

s/Teena Sanders

7974-0098/4892-7888-9102, v. 1

39